1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   KOLLEEN McNAMEE,                        No.  2:12-cv-03101-MCE-AC

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   THE ROMAN CATHOLIC DIOCESE
     OF SACRAMENTO, et al.,
15
16              Defendants.

17

18        Through this action, Plaintiff Kolleen McNamee ("Plaintiff") seeks relief from

19   Defendants Roman Catholic Diocese of Sacramento ("the Diocese") and Saint Francis

20   High School ("SFHS") (collectively "Defendants") arising from the termination of her

21   employment.  Specifically, Plaintiff alleges two causes of action against Defendants:

22   retaliation in violation of 42 U.S.C. § 2000e and gender discrimination in violation of

23   42 U.S.C. § 2000e, et seq.  Compl., Dec. 27, 2012, ECF No. 1.

24        Presently before the Court is Plaintiff's Amended Motion to Amend the Complaint

25   ("Motion").  Mot., Sept. 16, 2013, ECF No. 16.  Defendants filed a timely Opposition.

26   Opp'n, October 3, 2013, ECF No. 18.  For the reasons set forth below, Plaintiff's Motion

27   is granted.[1]

28        [1] Because oral argument will not be of material assistance, the Court ordered this matter

1

## BACKGROUND[2]

2

3          Defendant SFHS employed Plaintiff, a female, as the Athletic Director for

4    approximately 11 years.  During Plaintiff's employment, the school's senior

5    administrators consistently praised Plaintiff's performance in written evaluations.

6          Plaintiff alleges that several male coaches nonetheless refused to follow Plaintiff's

7    directives regarding health and safety regulations and were insubordinate to Plaintiff,

8    partially due to Plaintiff's gender.  Plaintiff further alleges that, despite Plaintiff's

9    complaints and concerns, former President Marion Bishop, former Principal Patrick

10   O'Neil and Assistant Principal Anne Marie Faires of SFHS failed to take corrective action

11   against these coaches.  In September 2010, Plaintiff complained to Bishop, O'Neil and

12   Faires that she was being discriminated against, harassed, bullied, and defamed.  In

13   violation of SFHS's written policies, these Defendants failed to properly investigate her

14   complaints or to take any corrective action.  In September 2011, Plaintiff again

15   complained, raising several safety concerns.

16         More specifically, while Plaintiff was on maternity leave in late May 2011,

17   Defendants refused to take corrective actions against a male basketball coach who

18   continued to violate safety protocol and who had been insubordinate to Plaintiff.  Rather

19   than take corrective actions, Defendants removed basketball from the Athletic Director's

20   responsibilities, so that Plaintiff no longer supervised that male coach.  Plaintiff contends

21   this change occurred because the male coach had problems taking direction from

22   women.

23         Plaintiff also alleges that in January and March of 2012, Defendants disciplined

24   her and provided pretextual explanations to cover their gender-based motivations.

25   Consequently, Plaintiff lodged another discrimination complaint and requested an

26   investigation into both disciplinary incidents.

27   _____
     submitted on the briefs.  E.D. Cal. Local R. 230(g).

28         [2] The following recitation of facts is taken, at times verbatim, from Plaintiff's Complaint.

1    However, in violation of SFHS's written policies, no investigation ever took place.

2    Ultimately, in August 2012, Defendants terminated Plaintiff's employment so they could

3    hire a male athletic director.

4         Plaintiff's operative Complaint names only the Diocese and SFHS as Defendants,

5    and only alleges causes of action for gender discrimination and retaliation.  Defendants

6    answered the Complaint in February 2013.  Answer, Feb. 4, 2013, ECF No. 7.  A pretrial

7    scheduling order was issued in May 2013, PTSO, May 23, 2013, ECF No. 9, which was

8    later amended in July 2013.  Am. PTSO, July 25, 2013, ECF No. 12.  Both orders clearly

9    state: "No joinder of parties or amendments to pleadings is permitted without leave of

10   court, good cause having been shown."  PTSO at 1; Am. PTSO at 1.

11        Plaintiff now seeks leave to amend the pretrial scheduling order so that she may

12   amend her Complaint to name Faires, Bishop and O'Neil as Defendants.  She also

13   wishes to add a defamation cause of action.

14

15                                         **STANDARD**

16

17        Generally, a motion to amend is subject to Rule 15(a) of the Federal Rules of Civil

18   Procedure,[3] which provides that "[t]he court should freely give leave [to amend] when

19   justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "[o]nce the district court ha[s]

20   filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16[,] which

21   establishe[s] a timetable for amending pleadings[,] that rule's standards control[ ]."

22   Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992); see In re

23   W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 737 (9th Cir. 2013).

24        Rule 16(b) requires a party seeking leave to amend to demonstrate "good cause."

25   Fed. R. Civ. P. 16(b).  "Rule 16(b)'s 'good cause' standard primarily considers the

26   diligence of the party seeking amendment."  Johnson, 975 F.2d at 609.

27   _____

28        [3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

3

1    "If that party was not diligent, the inquiry should end."  Id.  Although "the focus of the

2    inquiry is upon the moving party's reasons for seeking modification," a court may make

3    its determination by noting the prejudice to other parties.  Id.

4          If good cause is found, the court must then evaluate the request to amend in light

5    of Rule 15(a)'s liberal standard.  Id. at 608.  Leave to amend should be granted unless

6    amendment: (1) would cause prejudice to the opposing party, (2) is sought in bad faith,

7    (3) creates undue delay, (4) or is futile.  Chudacoff v. Univ. Med. Ctr. of S. Nev.,

8    649 F.3d 1143, 1153 (9th Cir. 2011) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

9    "Because Rule 16(b)'s 'good cause' inquiry essentially incorporates the first three

10   factors, if a court finds that good cause exists, it should then deny a motion for leave to

11   amend only if such amendment would be futile."  Baisa v. Indymac Fed. Reserve,

12   No. 2:09-CV-01464-WBS-JFM, 2010 WL 2348736, at *1 (E.D. Cal. June 7, 2010).

13

14                                  **ANALYSIS**

15

16         **A.      Rule 16**

17

18         Under Rule 16, the issue is whether there is "good cause" to amend the

19   scheduling order.  Fed. R. Civ. P. 16(b).  In undertaking this inquiry, the Court must

20   consider both the diligence of the moving party and the potential prejudice to the

21   opposing party.  See Johnson, 975 F.2d at 609.

22         Here, Plaintiff states that she was not aware of the grounds for her defamation

23   claims June 20, 2013, when the Diocese delivered documents in response to Plaintiff's

24   initial document production request.  Telfer Decl. 1, Sept. 16, 2013, ECF No. 17.  Upon

25   examination of the responses, Plaintiff's counsel identified several documents which she

26   and her client had never seen before, and which Plaintiff's counsel believes are

27   defamatory.  Id.  Subsequently, between the end of June and the beginning of August,

28   Plaintiff deposed Faires, Bishop and O'Neil.  Id.

                                        4

1  At these depositions, Plaintiff's counsel confirmed both that these individuals authored
2  some of the allegedly defamatory documents, and that these individuals had no factual
3  basis to make the allegedly defamatory statements contained therein.  Id.

4      Based on the evidence before the Court, Plaintiff meets the good cause standard.
5  Plaintiff has clearly been diligent in seeking amendment, as Plaintiff obtained the
6  relevant information from the three individuals between June and August and filed a
7  motion for leave to amend the complaint in early September.[4]  Moreover, there is no
8  evidence of risk of prejudice to Defendants, as discovery does not close for an additional
9  seven months and Plaintiff has not yet been deposed.  Accordingly, there is good cause
10  under Rule 16(b) to amend the pretrial scheduling order to permit Plaintiff to amend the
11  Complaint.

12

13      **B.    Rule 15**

14

15      Because good cause has been shown, the Court must evaluate Plaintiff's request
16  to amend the Complaint in light of Rule 15(a)'s liberal standard.  Johnson, 975 F.2d at
17  608.  As indicated above, "[b]ecause Rule 16(b)'s 'good cause' inquiry essentially
18  incorporates the first three factors [of the Rule 15 standard]," the inquiry at this stage
19  asks "only if such amendment would be futile."  Baisa, 2010 WL 2348736, at *1.

20      Defendants first argue that Plaintiff's proposed amendment is futile because the
21  allegedly defamatory communications were carried out in an employee-managerial
22  context, and thus are privileged under California case law and California Civil Code
23  section 47.  Opp'n at 2.  "California law recognizes two types of privileged
24  communications—communications which are absolutely privileged and communications
25  which are qualifiedly or conditionally privileged.  If absolutely privileged, there is no
26  liability even if the defamatory communication is made with actual malice.

27  _____

28      [4] Plaintiff originally filed the Motion to Amend the Complaint on September 10, 2013.  However,
the motion as filed was deficient, and, thus, Plaintiff filed the instant Motion on September 16, 2013.

5

1  If the privilege is only conditional or qualified, a finding of malice will prevent the

2  communication from being found privileged."  Kashian v. Harriman, 98 Cal. App. 4th 892,

3  912 (2002) (quoting Cruey v. Gannett Co., 64 Cal. App. 4th 356, 367 (1998)).  Here,

4  Defendants argue that the common interest privilege, codified in California Civil Code

5  section 47(c), applies.  This section makes privileged a publication made:

6  
7  
8  
9  

> In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

10  Cal. Civ. Code § 47(c).

11          This privilege is conditional in that, if it is shown that the statement was made with

12  malice, the privilege never arises.  Kashian, 98 Cal. App. 4th at 914-15.  The California

13  Supreme Court has stated that "[t]he malice referred to by the statute is actual malice or

14  malice in fact, that is, a state of mind arising from hatred or ill will, evidencing a

15  willingness to vex, annoy or injure another person."  Agarwal, 25 Cal.3d at 944.

16          "However, malice may also be established by showing that the defendant lacked

17  reasonable grounds to believe the statement true and therefore acted with reckless

18  disregard for plaintiff's rights."  Duste v. Chevron Prods. Co., 738 F. Supp. 2d 1027,

19  1042-43 (N.D. Cal. 2010) (citing Sanborn v. Chronicle Pub. Co., 18 Cal.3d 406, 413

20  (1976); Cuenca v. Safeway S.F. Employees Fed. Credit Union, 180 Cal. App. 3d 985,

21  997 (1986)).  Negligence on the part of the speaker is not tantamount to malice.  Id.

22  (citing Cabanas v. Gloodt Assocs., 942 F. Supp. 1295, 1301 (E.D. Cal. 1996)).  "Thus, in

23  demonstrating reckless disregard, it is not sufficient that the statements are shown to be

24  inaccurate, or even unreasonable."  Id.  "It is only when the negligence amounts to a

25  reckless or wanton disregard for the truth, so as to reasonably imply a willful disregard

26  for or avoidance of accuracy, that malice is shown."  Id. (quoting Cabanas, 942 F. Supp.

27  at 1301-02).  Accordingly, only a showing of "willful falsity or recklessness will suffice."

28  Cabanas, 942 F. Supp. at 1301-02.

1    Defendants contend that Plaintiff cannot plead facts showing malice, and that

2    malice must be specifically alleged and shown with detailed facts.  Opp'n at 7.  At this

3    stage of the proceedings, however, "[t]he court determines whether the counterclaim

4    would be futile upon application of the Rule 12(b)(6) standard, that is, whether there are

5    no set of facts under which the counterclaimant could recover on his causes of action."

6    Kuschner v. Nationwide Credit, Inc., 256 F.R.D. 684, 689 (E.D. Cal. 2009) (citing Miller v.

7    Rykogg-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)).  Additionally, because Plaintiff's

8    defamation claim does not "sound in fraud," Plaintiff is not required to plead the element

9    of malice, or the defamation claim as a whole, with the specificity required by Rule 9(b).

10   See, e.g., Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003)

11   (citations omitted).  Accordingly, Plaintiff need only provide "a short and plain statement

12   of the claim showing that [Plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2); Bell Atl.

13   Corp. v. Twombly, 550 U.S. 544, 555 (2007).

14   Defendant also contends that Plaintiff's defamation claim is non-actionable under

15   California case law.  Defendant relies heavily on Jensen v. Hewlett-Packard Co.,

16   14 Cal. App. 4th 958 (1993), in support of this proposition.  The Jensen court held that

17   comments made on a performance evaluation are non-actionable statements of opinion,

18   "unless an employer's performance evaluation falsely accuses an employee of criminal

19   conduct, lack of integrity, dishonesty, incompetence or reprehensible personal

20   characteristics."  Id. at 965.  The court reasoned that "the word 'evaluation' denotes

21   opinion, not fact" and that the purpose of the document was "as a management tool for

22   examining, appraising, judging, and documenting the employee's performance."  Id. at

23   970.  However, the allegedly defamatory writings at issue in this case are readily

24   distinguishable from those at issue in Jensen.  These writings are not performance

25   evaluations but, rather, are contained in writings discussing the complaints by Plaintiff

26   regarding the discrimination against her.  See Telfer Decl. at 4, 8, 9.  Moreover, these

27   writings may be understood as assertions of fact and not as mere opinions.  Accordingly,

28   Plaintiff's claim is not futile under California case law.

7

1    Finally, Defendants argue that Plaintiff conceded that these three individuals—all

2    supervisors—were acting within the course and scope of their employment at the school

3    and, thus, are entitled to indemnification.  Opp'n at 2.  Defendants therefore contend that

4    "as a practical matter, there is no interest served by adding the three individual

5    defendants because they are guaranteed indemnification by" Defendants.  Id. at 7.

6    However, the Court will not bar Plaintiff from naming these three individuals as

7    defendants merely because they may later be indemnified by SFHS and the Roman

8    Catholic Diocese of Sacramento.  Possible, or even certain, indemnification is insufficient

9    to show that amendment would be futile.  Indeed, Defendants cite no case, and the

10   Court is aware of none, finding amendment futile under Rule 15(a) due to an employee's

11   potential indemnification by an employer.

12       In sum, because it appears Plaintiff may plead a set of facts sufficient to state a

13   cause of action for defamation which is precluded neither by California case law nor

14   California Civil Code section 47(c), Plaintiff will be afforded the opportunity to amend her

15   complaint.  Plaintiff's Motion is therefore GRANTED.

16

17                                      **CONCLUSION**

18

19       For the reasons set forth above, Plaintiff's Motion to Amend the Complaint is

20   GRANTED.  Mot., ECF No. 16.  Plaintiff shall file a First Amended Complaint within thirty

21   (30) days from the date of this memorandum and order.

22       IT IS SO ORDERED.

23   Dated:  October 21, 2013

24

25

26   _____
     MORRISON C. ENGLAND, JR., CHIEF JUDGE

27   UNITED STATES DISTRICT COURT

28

                                        8